# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### NOVEMBER 17, 2011 Session

## DONALD W. OWEN AND JENNIFER OWEN
### v.
## LONG TIRE, LLC; LEON LONG; AND NANCY LONG
### v.
## OWEN ALIGNMENT, INC.

### An Appeal from the Circuit Court for Hardeman County
### No. 09-02-0410    J. Weber McCraw, Judge

### No. W2011-01227-COA-R3-CV - Filed December 22, 2011

This is a breach of contract and conversion case. The trial court dismissed the plaintiffs' complaint and conducted a bench trial on the defendants' counterclaim for breach of contract and conversion. The trial court held in favor of the defendants. The plaintiffs now appeal. We find the plaintiffs' appellate brief to be in substantial violation of Rule 27 of the Tennessee Rules of Appellate Procedure; in light of this, we decline to address the merits of the case and dismiss the appeal.

### Tenn. R. App. P. 3 Appeal as of Right; Appeal is Dismissed and Remanded

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Lewis K. Garrison, Sr., Oakland, Tennessee, for the Plaintiff/Counter-Defendant/Appellants Donald W. Owen and Jennifer Owen, and Third-Party Defendant Owen Alignment, Inc.[1]

Loys A. "Trey" Jordan, III, and Joseph B. Baker, Memphis, Tennessee, for the Defendant/Counter-Plaintiff/Third-Party Plaintiff/Appellees Long Tire, LLC, Leon Long, and Nancy Long

---

[1]Mr. Garrison did not represent the Owens in the trial court.

# OPINION

## FACTUAL BACKGROUND

Plaintiff/Appellants Donald W. Owen and his wife, Jennifer Owen (collectively, "the Owens"), own an automobile service business called Owen Alignment, Inc., located in Eads, Tennessee. At some point in the past, Defendant/Appellee Leon Long, worked for Mr. Owen's father.

After he retired, Mr. Long decided that he wanted to purchase an automobile service business for himself. He discussed this desire with Mr. Owen. As a result, in 2007, the Owens entered into a Licensing Agreement with Mr. Long and his wife, Defendant/Appellee Nancy Long (collectively, "the Longs"), to purchase and operate a second Owen Alignment "franchise" in Bolivar, Tennessee. In entering into the Licensing Agreement, the Owens assured the Longs that they had applied for a trademark of the "Owen Alignment" name. Based on this assurance, the License Agreement included a provision that the Longs would pay the Owens an "initial fee" of $200,000, plus a 5% "royalty fee," in exchange for the right to the exclusive use of the Owen Alignment trademark. By September 2008, the Longs had paid the Owens $154,035.36 under the Licensing Agreement, comprised of $133,760 towards the initial fee plus $20,275.36 towards the "royalty fee." In addition, the Longs paid the Owens $51,917.33, for Mr. Owen to allegedly oversee and consult with the Longs regarding the Bolivar Owen Alignment business.

In the 2008 economic downturn, the Longs stopped paying the Owens any money under the Licensing Agreement. At about the same time, the Owens became convinced that the Longs were intentionally under-reporting the revenue generated by the Owen Alignment franchise, so as to purposefully deprive the Owens of their share of the income.

In the spring of 2009, the Owens decided to take matters into their own hands. On April 1, 2009, the Owens waited until after business hours and went into the Bolivar Owen Alignment building, without any notification to the Longs. They brought with them four other individuals, three trucks, and one trailer. The Owens then proceeded to take everything that was not physically attached to the building, including equipment, tools, computers, files, business records, and office furniture. After taking everything that could be physically removed, the Owens damaged all of the remaining personal property located on the Longs' premises. This whole process took some five to six hours. As they left, Mr. Owen personally changed the locks to the Longs' building, in order to, as he later explained, totally "shut down the [Longs'] business."

Two weeks later, on April 15, 2009, the Owens filed this lawsuit against the Longs and their business, Long Tire, LLC.[2] The lawsuit alleged that the Longs defrauded the Owens out of payments due under the Licensing Agreement by failing to report and account for all of the sales made by the Longs at the Bolivar Owen Alignment business. In response, the Longs filed an answer and a counterclaim, as well as a third-party claim against Owen Alignment, Inc.[3] The Longs contended, *inter alia*, that the Owens breached the Licensing Agreement by failing to apply for a trademark for Owens Alignment, and that they committed conversion by unlawfully entering the Bolivar Owen Alignment business premises and either removing or damaging all of the Longs' personal property. Discovery ensued.

In June 2009, the Longs propounded a request for production of documents to the Owens seeking, among other things, production of the documents that the Owens took from the Longs' business during their after-hours raid. After several unsuccessful attempts to obtain these documents, the Longs filed a motion for sanctions, seeking dismissal of the Owens' complaint as a discovery sanction.

On November 20, 2009, the trial court entered an order granting the Longs' motion for sanctions. Because the Owens had engaged in repeated discovery violations, the trial court dismissed the Owens' complaint with prejudice as a discovery sanction.[4] This order was made final and appealable pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure.[5] The Owens did not file an appeal at that time.

On April 25, 2011, the trial court held a bench trial on the Longs' counterclaim and third-party complaint against the Owens. On May 10, 2011, the trial court entered an order in favor of the Longs, awarding them a total of $423,184.85 in compensatory and punitive damages, as well as attorney fees. The Owens' motion for a new trial and for a stay of execution was denied. The Owens now appeal.

---

[2] Any reference to "the Longs" hereafter includes the Defendant Long Tire, LLC, unless otherwise noted.

[3] Any reference to "the Owens" hereafter includes Third-Party Defendant Owen Alignment, Inc., unless otherwise noted.

[4] At this time, the Owens were not represented by counsel.

[5] The Owens, still acting *pro se*, filed a motion to reconsider the order dismissing their complaint. Subsequently, the Owens filed for Chapter 13 Bankruptcy protection. On March 19, 2010, the Bankruptcy Court entered an Order Lifting the Automatic Stay so as to allow this matter to proceed. In May 2010, the trial court heard arguments on the Owens' motion to reconsider, the Owens by that time being represented by counsel. On June 1, 2010, the trial court entered an order denying the Owens' motion to reconsider, and it reiterated that the order was a final judgment under Rule 54.02.

## ANALYSIS

On appeal, the Owens ask this Court to reverse the trial court's decision, reinstate their complaint, and grant them a new trial. However, as explained below, we find that the Owens' appellate brief has such serious deficiencies that the Court is unable to reach the merits of the Owens' appeal.

Rule 27 of the Tennessee Rules of Appellate Procedure provides, in pertinent part, as follows:

> (a) Brief of the Appellant. The brief of the appellant *shall* contain under appropriate headings and in the order here indicated:
>
> (1) A table of contents, with references to the pages in the brief;
> (2) A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;
> (3) A jurisdictional statement in cases appealed to the Supreme Court directly from the trial court indicating briefly the jurisdictional grounds for the appeal to the Supreme Court;
> (4) A statement of the issues presented for review;
> (5) A statement of the case, indicating briefly the nature of the case, the course of proceedings, and its disposition in the court below;
> (6) A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;
> (7) An argument, which may be preceded by a summary of argument, setting forth:
>> (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and
>> (B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);
> (8) A short conclusion, stating the precise relief sought.

Tenn. R. App. P. 27 (emphasis added). Rule 6 of the Court of Appeals of Tennessee sets forth requirements for the format and content of the written argument "in regard to each issue on appeal." It states:

> (a) Written argument in regard to each issue on appeal shall contain:
> (1) A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, ***with citation to the record*** where the erroneous or corrective action is recorded.
> (2) A statement showing how such alleged error was seasonably called to the attention of the trial judge ***with citation to that part of the record*** where appellant's challenge of the alleged error is recorded.
> (3) A statement reciting wherein appellant was prejudiced by such alleged error, ***with citations to the record*** showing where the resultant prejudice is recorded.
> (4) A statement of each determinative fact relied upon ***with citation to the record*** where evidence of each such fact may be found.
> (b) No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a ***specific reference to the page or pages of the record*** where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a ***reference to the page or pages of the record*** where evidence of such fact is recorded.

R. Ct. App. Tenn. 6 (emphasis added).

Despite the explicit requirements of Rule 27 and Rule 6, the Owens' appellate brief is rife with deficiencies. Prominent among the deficiencies are the complete omission of (1) a table of contents, (2) a table of authorities, (3) a statement of the issues presented for review, (4) a statement of the case, (5) references to the appellate record in the statement of the facts, or (6) references to the record or citation to authority in the argument section of the brief.[6]

The most glaring deficiency in the Owens' appellate brief is the complete omission of any statement of issues presented for review. The requirement of a statement of the issues raised

---

[6]The Owens' appellate brief contains a section entitled "Law." In that section, several cases are cited in succession with a one-sentence description of the holding in the case following the citation. The significance of these case cites is never explained, because the Owens do not incorporate these authorities in their "Argument" section of the brief, and they do not explain how or to what issues these authorities apply. This manner of citation to authority in an appellate brief is essentially meaningless and does not assist this Court in its appellate review.

on appeal is no mere technicality. First, of course, the appellee is entitled to fair notice of the appellate issues so as to prepare his or her response. Most important, this Court is not charged with the responsibility of scouring the appellate record for any reversible error the trial court may have committed. On appeal, "[r]eview generally will extend only to those issues presented for review." Tenn. R. App. P. 13.[7]

Furthermore, as we have indicated, the Owens' brief contains no citation to the record in either their statement of the facts or in the argument section of their brief.[8] "This Court is under no duty to verify unsupported allegations in a party's brief, or for that matter consider issues raised but not argued in their brief."[9] *Bean v. Bean*, 40 S.W.3d 52, 56 (Tenn. Ct. App. 2009); *see Mabry v. Mabry*, No. 03A01-9106CH207, 1992 WL 24995, at *1 ("It is not incumbent upon this Court to sift through the record in order to find proof to substantiate the factual allegations of the parties."). The Owens "cannot expect this Court to do [their] work for them." *Bean*, 40 S.W.3d at 56. Overall, the profound deficiencies in the Owens' brief renders appellate review impracticable, if not impossible. *See Missionary Ridge Baptist Church v. Tidwell*, 1990 WL 94707, *2 (Tenn. Ct. App. July 11, 1990) (refusing to rely on the brief of the appellant because it did not contain references to the record either in the statement of facts or the argument section of its brief).

We recognize that there are times when this Court, in the discretion afforded it under Rule 2 of the Tennessee Rules of Appellate Procedure, may waive the briefing requirements to

---

[7]In this case, the Longs, in an attempt to respond to the Owens' brief, tried to glean from the Owens' appellate brief the issues that the Owens sought to raise on appeal. In doing so, the Longs' appellate brief, in its statement of the issues, listed a number of issues that the Longs thought that the Owens might be attempting to raise. The Longs then tried to respond to those issues in their appellate brief.

In oral argument in this appeal, counsel for the Owens was asked by this Court about the omission of, among other things, any statement of the issues in the Owens' appellate brief. Counsel for the Owens responded by offering to adopt the statement of the issues in the Longs' appellate brief. That "offer" was firmly rejected at oral argument, and we reiterate that holding. An appellant who fails to include a statement of the issues in his or her brief cannot cure such a fundamental deficiency by "adopting" the issues as stated by the appellee.

[8]Not surprisingly, the Owens' brief also did not contain a statement of the case, also required under the appellate rules. *See* Tenn. R. App. P. 27(a)(5).

[9]In *Bean*, this Court refused to consider issues raised, but not argued in their brief. In the situation in the instant case, it is the converse, where undefined issues are argued but were not raised. Both leave an appeal vulnerable to dismissal.

adjudicate the issues on their merits.[10]  This may occur on occasion when, for example, a party appeals *pro se* or when resolution of the case impacts innocent parties such as children. ***See, e.g., Chiozza v. Chiozza***, 315 S.W.3d 482, 489 (Tenn. Ct. App. 2009) (noting that the briefing requirements are more likely to be waived "in cases involving domestic relations where the interests of children are involved"); ***Word v. Word***, 937 S.W.2d 931, 932 n.1 (Tenn. Ct. App. 1996) (addressing the merits of the appeal, despite failure to include statement of the issues, but affirming the majority of the trial court's rulings because there was no transcript of the evidence).  This is not such a case.  The Owens chose their course of action and now must bear the consequences.

"[T]he Supreme Court has held that it will not find this Court in error for not considering a case on its merits where the plaintiff did not comply with the rules of this Court." ***Bean***, 40 S.W.3d at 54-55 (citing ***Crowe v. Birmingham & N.W. Ry. Co.***, 156 Tenn. 349, 1 S.W.2d 781 (1928)).  In light of the Owens' failure to comply with Rule 27 and Rule 6, quoted above, we decline to address the merits of this appeal.  ***See id.***; ***Duchow v. Whalen***, 872 S.W.2d 692, 693 (Tenn. Ct. App. 1993).

The Longs ask this Court to grant them an award of attorney fees expended in this appeal, pursuant to the attorney fee provision in the Licensing Agreement.  That contractual provision states: "In the event of any default on the part of either party hereto, in addition to any other remedies of the aggrieved party, the losing party shall pay to the prevailing party all amounts due and all damages, costs, and expenses, including reasonable attorney's fees, incurred by the prevailing party as a result such default."  Pursuant to the attorney fee provision in the Licensing Agreement, we grant the Longs' request for attorney fees on appeal and remand the cause to the trial court for a determination of the reasonable amount of those fees.

---

[10]Similarly, Rule 1 of the Rules of the Court of Appeals of Tennessee permits, "[f]or good cause, including the interest of expediting a decision upon any matter, this Court ... [to] suspend the requirements or provisions of any of these rules in a particular case on motion of a party, or on its own motion, and may order proceedings in accordance with its discretion."  R. Ct. App. Tenn. 1.

**CONCLUSION**

The appeal is dismissed and the cause is remanded for a determination of the Longs' reasonable attorney fees incurred on appeal. Costs on appeal are to be taxed to Appellants Donald W. Owen, Jennifer Owen, Owen Alignment, Inc., and their sureties for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE